(65 Misc. Rep. 432.)

## In re EYSEL'S ESTATE.

(Surrogate's Court, Kings County. December, 1909.)

1. MARRIAGE (§ 54*) — EFFECT OF INVALIDITY — JOINT DEPOSITS IN BANK — RIGHTS OF SURVIVOR.

Intention where husband and wife deposited moneys to their joint credit that they shall belong to the survivor is not repelled by the fact that their marriage was unlawful by reason of the husband having a prior wife living at the time of its solemnization.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 93; Dec. Dig. § 54.*]

2. MARRIAGE (§ 54*) — EFFECT OF INVALIDITY — JOINT DEPOSITS IN BANK — RIGHTS OF SURVIVOR.

Where a husband and wife deposit moneys to their joint credit in a savings bank, an arrangement that the woman sustaining to him the apparent relation of wife should receive portions of the money at the discretion of a third person, made by her supposed husband on his departure to a foreign country, is not inconsistent with the intent that, in case of his death, she should have it all.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 93; Dec. Dig. § 54.*]

In the Matter of the Estate of Ferdinand E. Eysel. Proceedings on the judicial settlement of the account of Magdalena Eysel, administratrix. Decree rendered.

George Gru, for accounting party.

Frederick S. Taggart (R. B. Knowles, of counsel), for objectors.

M. A. O'Neil, special guardian.

KETCHAM, S. This administratrix was appointed upon her claim that she was the wife of the intestate, and her letters were revoked upon the finding that she was not. Objection is made that she has not charged herself in this account with the sums on deposit in a bank account hereinafter described, or with the avails of a note made to the intestate and herself. Her claim is that the bank deposit and the note became her own upon the death of the intestate. The deceased, having moneys deposited in his own name, surrendered the book in which the deposit was recorded, and caused the amount then appearing thereon to his credit to be deposited in the same bank in the names of himself and this administratrix, as follows: "Ferdinand Engelh. Eysel and Magdalena Eysel." The note in question was dated in February, 1908, and was made to the order of Ferdinand E. Eysel and Magdalena Eysel. · The court will find that the consideration for this note proceeded from the intestate.

There was a ceremony of marriage between the deceased and this administratrix on September 13, 1902. They lived as husband and wife for the rest of his life, except that he went to Europe in August, 1908, where she shortly joined him; but in 1872 the intestate entered into a ceremony of marriage with Marie Eysel, who still survives. It appears from the record in evidence of the proceedings for the revocation of the letters of this administratrix that Marie, when married to

the intestate, was the wife of another, then living. From the union of the intestate with Marie there were begotten five children. In 1896 the intestate obtained judgment against Marie, annulling his marriage with her, upon the allegation and finding of her former marriage. A few months later, in the same year, the intestate sought his former wife and renewed relations with her under conditions which would constitute a contract of marriage if there were no impediment to marriage on the part of either of them. There was no such obstacle, for Marie's former husband had died before the decree of annulment was entered. It was upon these facts that it was held in revoking the letters of the present accountant that the intestate was lawfully married to Marie in 1896, that the marriage then entered into subsisted for the rest of his life, and that there was no validity in the marriage which was solemnized between the intestate and the administratrix.

As to whether the accountant in her apparent marriage and in the association by which it was confirmed acted in sincerity and good faith, there is no evidence save the ceremony itself; and from that alone the just conclusion is that she did not make a mock of its solemnities, but did believe that it was a valid and honorable transaction, unincumbered by any prior engagement of the intestate. It is settled that where a husband deposits his own moneys in the names of himself and his wife, or invests his own moneys in a security in the same manner, his act, in the absence of evidence to the contrary, evinces an intention to benefit his wife to the extent of a right of survivorship in the fund so deposited or invested. West v. McCullough, 123 App. Div. 846, 108 N. Y. Supp. 493. This rule, whenever expressed, has been applied only to parties to an actual and lawful marriage. In a transaction clearly of a nature to bestow the right to the fund upon the woman, if she were the lawful wife, is the same rule less controlling when it appears that there was a de facto marriage, in which the woman, though in law lacking the actual right of wifehood, was in good faith persuaded that her relation was marital, and the man, whether or not he was aware of the flaw in his marriage, maintained every attitude and form of conduct which a lawful spouse would exhibit?

In the ordinary case of deposit by a real husband the rule does not depend upon the essential fact of marriage. It arises from the impulses which would ordinarily be found to affect two persons who were married. The original rule is that a deposit made or a security taken in the names of any two persons, whatever their relation, may be made the subject of an intention and arrangement that, in case of death, the survivor shall be entitled to the fund. This arrangement may be shown by express contract or by circumstances. Among the circumstances from which the intention may be gathered, the marital relation is influential, not as a condition or prerequisite of any compact, but merely as a fact affording probability that the intention existed. In such case the wife does not take by legal operation dependent upon her right of wifehood, but does take because the depositor, being her husband, and naming his wife in association with him, has given sound evidence of an intention that the person so associated shall have the right of survivorship. The marriage is the basis for the conclusion

that the deposit, which between strangers might not have imported a contract for survivorship, takes another meaning when the deposit concerns two persons whose conduct and intentions toward each other are influenced and shaped by their consciousness and recognition of a marriage between them. The fact of wedlock is therefore only important as a reflection and record of their mutual feelings and purposes. Its use is merely evidentiary. It tends to show, and if unqualified by other evidence it does show, that the depositors have thought and acted as two persons ordinarily think and act under the sway of marital obligation when such a deposit is made.

It is made plain in West v. McCullough, supra, that it is the probability of intention which flows from marriage, and not the fact of marriage itself, which gives reason to the rule there reaffirmed. There is no longer survivorship in the wife as to a chose in action payable to husband and wife named together, and, unless there is evidence of an intention to benefit her, the surviving wife cannot be entitled to the fund. The same sources of evidence and the same finding of the intention would be present where the two parties to the deposit, though in law not married, sincerely and reasonably believe themselves to be man and wife. Then the man making the deposit would by his act, when read in the light of his love and his duty toward his supposed spouse, give proof that he meant that the fund should be hers upon his death. The evidence of his wish and arrangement as to the bank account would be no less convincing if it should thereafter appear that a former wife, believed to be dead, was still alive, and that the deposit had been made between two persons who were matrimonial strangers.

Is there evidence of the intention where the deposit is made in the names of two persons to a ceremonial marriage, one of whom (the husband) is bound by a former marriage still subsisting, and knows it, and the other of whom (the wife) has neither doubt, nor ground of doubt, that the marriage is valid? The woman's attitude, for every evidential relation to the transaction, is the same as if she were a true and honorable wife. The man's attitude is as if he said: "My wife, because we are married according to every ordinance of church and state, I make this deposit in the form by which the law regarding like transactions between man and wife will make the money yours if I shall die before you. My act has the same purpose and is intended to have the same result upon my death as it would have if done by any man having a wife."

The effect of his deposit or investment is to be measured, not by what he had in mind, but by what was in the mind of her to whom the benefit was proffered. Did he intend her to believe and rely upon his conduct in the same manner and to the same degree as wives, in like case, are by law invited to believe and rely? The money was his and was capable of bestowal upon her in case of his death by means of this form of deposit. It only needed that he should characterize and explain the deposit by any act sufficient to evidence the intention that she should have it in the event mentioned. This act he did, unless the finding is to be that he meant to deceive the woman in his lifetime and to mock her from the grave. It is enjoined by law and charity that

men's conduct and language shall be taken as straight rather than devious, true to their natural and open meaning rather than to any hidden reservation. There is no reason to believe that there was any covert purpose in this man's conduct, and his deposit and investment in the joint note constitute and evidence an intention and arrangement that the amounts to be realized therefrom upon his death should belong to the accountant.

As to the bank account, the same result would be reached by another path. "Joint tenancies of savings bank deposits may, however, be created, if so the parties intend, irrespective of whether the tenants be husband and wife, and in such case the right of survivorship exists." West v. McCullough, supra. Evidently these compacts have been supported without resort to the theory of survivorship ex jure uxoris (for that has been abolished), or gift (for that would require delivery), or contract (for that would require consideration), or trust (for a trust needs a declaration), or testamentary disposition (for that must conform to the statute). The transaction is without a name. It is said to be "the creation of a joint tenancy," "an intention to benefit the survivor which requires nothing to be done to effectuate that intention." All that has been written in behalf of this arrangement comes to this: If the fund stands in two names and the owner has intended that upon his death the survivor shall enjoy the remnant, the transaction is effectual. The cases look only for evidence of the intention. In the case at bar, as to the bank deposit, at least, this intention appears, whatever were the relations of the parties.

The intestate closed the account standing in his sole name and on the same day deposited his entire balance in the same bank to the credit of himself and the person now claiming the deposit. This later form of the account was maintained during the rest of his life, nearly a year. In 1908, upon the eve of his departure for Europe, it appears, by testimony which is accepted, that the intestate said that he gave Mrs. Eysel (the present accountant) $2,200 in the German Bank in New York City, in her name (obviously referring to the deposit in question); that he further said:

"Then, if he did not come back, she should have all the money that he left because the children (of his earlier marriage) had nothing to do with the cash money that he had in the bank."

He said in the same talk, as a reason for his expression in her favor:

"She was so good to him before he got married, because he needed money. * * * She gave him $1,200 of her own money, because he did not draw out all the money for what he needed."

He said that "the money he gave her, $2,200" (the amount of the deposit charged to their joint credit) "belonged to her."

The effect of his conduct in changing the deposit and of this statement made in explanation thereof is not impaired by the testimony of a witness that the intestate, in preparation for his absence from the administratrix, arranged that she should receive portions of the deposit from time to time at the discretion of the witness. This arrangement was consistent with an intention that she should have the sum remain-

ing on deposit at his death. The provision for her concerned not the sums contained in the deposit, but their remnant at his death; and his solicitude that they should not be unwisely depleted does not impair, but rather supports, her claim.

The act of the accountant in signing a receipt for the bankbook and the note in her capacity as administratrix, though given full force as her declaration against her present contention, does not detract from the force of the conduct and statements of the intestate. When he changed his bank deposit from his own sole name to the names of himself and the accountant, the act unquestionably betokened an intention that his money should be held and disposed of in some way other than would have been its disposition if it had remained to his sole credit. It is equally certain that the intention to change the condition of the moneys concerned the person whose name was added to the account. This disposition of the deposit, with his subsequent statements, supplies evidence quite as forcible as any evidence derivable from the act of a husband who, without any declaration of his purpose, has merely made the joint deposit.

This depositor has avowed his intention that the person joined with him in the deposit should have all if he did not come back. He gave sound reason, if he did not prove consideration, for his arrangement in her behalf; and he said that the amount of the deposit belonged to her.

The objection that the accountant does not charge herself with the amount of the bank balance and the note is overruled, on the ground that both have belonged to her since the death of the intestate.

Decreed accordingly.